**Michelle SOARD, Claimant–Appellant**

v.

**TOWN & COUNTRY SUPERMAR-KETS, Employer–Respondent.**

No. 27093.

Missouri Court of Appeals,
Southern District,
Division One.

June 13, 2006.

Nancy R. Mogab, Mogab & Hughes, P.C., St. Louis, for appellant.

J. Bradley Young, Roberts, Perryman, Bomkamp & Meives, P.C., St. Louis, for respondent.

JOHN E. PARRISH, Judge.

Michelle Soard (claimant) appeals an award by the Labor and Industrial Relations Commission (the commission). The commission awarded claimant 70% permanent partial disability of the left lower extremity finding that claimant's injury was not a "body as a whole" disability. The commission further ordered payment of past medical expenses and found Town and Country Supermarkets (employer) and its insurer responsible for future "medical care as directed and coordinated by Dr. Reisler and Dr. Swarm or such other neurologist and pain management specialist designated by employer/insurer." This court affirms

Claimant was employed as a cake decorator. On August 11, 2000, she tripped over a water hose that was stretched across the kitchen in the deli area of employer's premises. She fell on her left knee. Claimant finished her work shift that day, then sought medical treatment at the Ripley County Family Clinic for pain she was experiencing in her left knee.

Claimant was examined at the clinic by a nurse practitioner, Dorothy Walker. Claimant received prescription pain medication and an x-ray of the left knee and was instructed to apply ice to her knee. She was excused from work through September 7, 2000.

Claimant continued to receive treatment at the clinic. An ultrasound and an MRI were performed on claimant's left lower extremity due to complaints of persistent pain in her left knee and pain that progressed to her left foot. The tests were negative for injury to claimant's leg or foot. Claimant was referred to Dr. John H. True and Dr. Steven C. Winters, orthopedists, and Dr. Shahid K. Choudhary, a neurologist.

Dr. True found no objective evidence of an injury upon examination of claimant. He concluded, based on claimant's subjective complaints, that she suffered a contusion secondary from her injury. He re-

leased claimant from work for one month and ordered physical therapy for her left lower extremity, knee, and ankle.

Dr. Winters ordered examination radiographs and MRI evaluation. He found no evidence of a fracture, internal derangement, or underlying bone injury. He noted limited mobility in claimant's left ankle, pain with "even light palpation on the leg," and "marked wasting" of the left quadriceps muscle. He ordered "intensive physical therapy to work on regaining mobility within the knee and ankle." Dr. Winters continued claimant off work.

Dr. Choudhary evaluated claimant. Claimant presented complaints of swelling and pain in her left knee, pain in her left arm and foot, and numbness and tingling in her left foot. The patient history Dr. Choudhary recorded indicated claimant had experienced "numbness, tingling, and pain in her left foot and ankle" for four weeks. Claimant complained that the physical therapy Dr. Winters ordered exacerbated her symptoms.

Dr. Choudhary noted swelling and discoloration of the lower left leg and foot. He scheduled a bone scan and EMG nerve conduction studies and suggested nerve blocks if claimant's symptoms persisted. The MRI of claimant's knee reported normal. The EMG nerve conduction studies were not performed due to claimant's inability to tolerate the pain associated with the tests. Dr. Choudhary diagnosed claimant with possible reflex sympathetic dystrophy (RSD), also known as regional pain syndrome. He excused claimant from work "until further notice" and ordered further physical therapy treatment. He noted that claimant suffered severe dystonia in her foot; that the dystonia was not

responding to medication and that botox injections were needed.

After examinations by Dr. True, Dr. Winters, and Dr. Choudhary, claimant was examined, at employer's request, by three other doctors, Dr. Yadava, Dr. Dunteman,[1] a pain management specialist, and Dr. Nogalski, an orthopedist. These examinations were followed by treatments and evaluations of claimant by three additional physicians, Dr. Shuter, Dr. Reisler, and Dr. Swarm, as well as additional treatments at the Ripley County Family Clinic and treatments on numerous occasions at a local emergency room for pain relief during times when claimant was receiving treatments by the other physicians. The Ripley County Family Clinic concluded claimant had exhausted its treatment capabilities by January 1, 2001.

Dr. Shuter examined claimant November 28, 2000. He diagnosed her as having complex regional pain syndrome accompanied by dystonic spasms. Dr. Reisler, a neurologist, evaluated claimant January 5, 2001. His opinion was that claimant had symptoms of multiple sclerosis. He admitted claimant to Barnes Hospital for testing. She was hospitalized ten days. Dr. Reisler concluded she suffered from RSD. He emphasized, in his review of her condition, that claimant's continued smoking would likely slow her recovery. He continued treatment of claimant until February 19, 2002, when he released claimant for return to work.

Claimant was also treated by Dr. Swarm for pain management during the time she was under Dr. Reisler's care. He provided weekly epidural shots through February 2001 and continued other treatment through 2001 into 2002.

---

1. Dr. Dunteman's conclusions included the belief that claimant's symptoms were exaggerated and inconsistent.

Dr. Shuter rated claimant's condition as permanent partial disability of "35 percent of a person." Dr. Reisler rated claimant's condition at 30% permanent partial disability of the body as a whole. He concluded claimant had maximum medical improvement May 19, 2003. He also questioned the extent of claimant's symptoms. *See* n. 1, *supra.*

The commission made the following finding.

> We do not find [claimant's] complaints entirely credible. The treating records are replete with reference to [claimant] exaggerating her symptoms. We do not dispute that she has CRPS and that her condition is painful. However, we do not find that her condition is as excruciating or as disabling as she described. We further find that her injury is at the level of the left knee and is not a "body as a whole" disability. We find [claimant] sustained 70% permanent partial disability at the 160–week level.... The permanent partial disability period shall commence running from May 19, 2003, which is the date that Dr. Reisler found that [claimant] reached maximum medical improvement.

As *Henley v. Tan Co., Inc.,* 140 S.W.3d 195 (Mo.App.2004), explains:

> On appellate review, a court must examine the whole record to determine if the Commission's award is supported by competent and substantial evidence. *Hampton [v. Big Boy Steel Erection,* 121 S.W.3d 220] at 222–223 [ (Mo.banc 2003) ]. In reviewing whether awards of the Commission are against the overwhelming weight of the evidence, the power of the court does not extend to reweighing the evidence. *Id.* Instead, the appellate court must determine whether the Commission could have reasonably made its findings and reached

its result upon consideration of all of the evidence before it. *Totten v. Treasurer of State,* 116 S.W.3d 624, 629 (Mo.App. E.D.2003).

> Additionally, "findings of fact made by the [C]ommission within its powers shall be conclusive and binding." Section 287.495.1.[2] Thus, we defer to the Commission on issues concerning credibility and the weight to be given conflicting evidence. *Totten* at 627. However, we independently review questions of law without deference to the Commission's findings. *Id.*

*Id.* at 198.

Claimant's Point I argues that "[the commission] erred in awarding the claimant Permanent Partial Disability of 30% [sic] at the level of the knee" rather than permanent partial disability of the body as a whole. Claimant contends "the facts found by the Commission do not support the award"; that "there was not sufficient competent evidence in the record to warrant the making of this award ... as the medical and lay evidence established the Claimant's Chronic Regional Pain Syndrome affected the Claimants [sic] body as a whole."

The commission did not dispute that claimant suffers from chronic regional pain syndrome. What it found was that claimant was not entirely credible as to the extent of her pain and disability. It did not adopt the administrative law judge's award of 75% permanent partial disability of the body as a whole, but rated claimant's disability as 70% of the left knee. In making its determination, the commission observed that Dr. Reisler rated claimant with a permanent partial disability of 30%, but that "[a]lthough not clear, it appear[ed] Dr. Reisler rated her disability at the level of her left knee."

2. Reference to statutes are to RSMo 2000.

■ This is a matter within the purview of the commission. "The·'[e]xtent and percentage of .a disability is a finding of fact within the special province of the Industrial Commission.'" *Eimer v. Bd. of Police Comm'rs*, 895 S.W.2d 117, 120 (Mo.App. 1995), *quoting Fogelsong v. Banquet Foods Corp.*, 526 S.W.2d 886, 892 (Mo.App.1975). *See also Pavia v. Smitty's Supermarket*, 118 S.W.3d 228, 234 (Mo.App.2003). The extent and percentage of disability will not be disturbed unless there is no competent evidence to support it. *Lowery v. ACF Industries, Inc.*, 428 S.W.2d 7, 10 (Mo.App. 1968).

The only medical testimony that rated claimant's disability was that of Dr. Shuter and Dr. Reisler. Dr. Shuter rated claimant with permanent partial disability of "35 percent of a person." Dr. Reisler stated the belief that claimant had 30% permanent partial disability of the body as a whole.

Dr. Reisler's examination of claimant occurred May 19, 2003. He reiterated his questioning of the extent of claimant's symptoms in a letter to employer's attorneys dated September 4, 2003. He acknowledged his prior contacts with claimant noting:

It is my understanding that this is my fifteenth letter concerning this individual since her referral for evaluation and treatment on 1–08–2001. It is my understanding that [claimant] was referred back for office examination on 6–10–2003. It is my understanding that she has moved out of state and is no longer available for followup examinations. Thus, the appointment for re-examination on 6–10–2003 was cancelled....

After responding to a question the attorney posed, Dr. Reisler observed that he had indicated in an earlier report dated May 14, 2002, that he thought "[claimant] would require followup treatment including supervision of a home exercise program, modest amounts of prescription analgesics, and some anti-inflammatory medication for control of a tendency to arthritis." He stated that he had expressed the belief that "[claimant] could be followed at 3–4 month intervals and that the overall cost of medications and medical follow-up would not exceed $2,000 a year." Dr. Reisler questioned claimant's perceived medical needs, stating:

My examinations of the patient failed to justify frequent appearances at local emergency rooms. It did not seem to me that there was clear justification for these medical interventions. Similarly, I found it difficult to understand why it was necessary for her to consult so many doctors.

He then responded to a final question employer's attorney asked observing that he believed he had previously stated the thought that "[claimant] ha[d] demonstrated evidence of a 30% permanent partial disability as a result of her work-related injury"; that "[t] his disability is the result of functional deficits involving the portion · of the left leg below the knee." (Emphasis added.)

■ There was evidence from which the commission could determine an extent and percentage of disability other than a finding of permanent partial disability of the body as a whole. This court defers to the commission on issues of credibility and weight of the evidence. *Henley v. Tan Co., supra.* There is, upon review of the whole record, competent and substantial evidence that supports the commission's determination. When there is evidence that would support either of two different findings regarding disability, the commission makes the determination. In that circumstance, the determination must be affirmed. *Darghe v. Blackburn Const. Co.*, 53 S.W.2d 1088, 1090 (Mo.App.1932).

The evidence before the commission supports a finding that claimant's symptoms in only her lower left extremity were of such degree to result in disability. The lack of a doctor's testimony that rated the disability as found by the commission does not require the commission's award to be reversed. *Henderson v. Laclede Christy Clay Products Co.*, 206 S.W.2d 673, 676 (Mo.App.1947). Point I is denied.

■ Point II is directed to the commission's denial of claimant's motion to consider additional evidence after her hearing before the administrative law judge. The hearing was held September 28, 2004. The administrative law judge's award was entered November 17, 2004. Employer filed a timely application for review. On December 7, 2004, claimant filed a "motion to submit additional medical evidence and provide medical care during employer/insurer's appeal." By that motion, claimant sought to introduce a medical report of Dr. Swarm regarding an evaluation of her that was made October 5, 2004, after the date of the hearing before the administrative law judge but before the date of the administrative law judge's report and award. Claimant alleged that the Ripley County Family Clinic arranged claimant's appointment with Dr. Swarm due to claimant's continued problems.

Dr. Swarm's report dated "10/05/04" was attached as an exhibit to claimant's motion. It includes a narrative regarding her complaints, her medication, and an examination performed by Dr. Swarm. The report states "[i]mpression" of the examining physician and outlines a plan of treatment that did not include further neurologic evaluation. The "[i]mpression" states:

1) Left lower extremity complex regional pain syndrome Type I(RSD).

2) Total and permanent disability.

3) Discontinued tobacco abuse as of April 2004.

4) Episodic left lower extremity numbness with occasional associated right lower extremity numbness, of unclear etiology.

The report did not state a disability rating.

The commission denied the motion to submit Dr. Swarm's report as additional evidence. It found the report was not so material that it would have produced a different result had it been introduced at the hearing.

Point II argues that the commission erred in denying claimant's motion "because the evidence is new, material and was not available at the time of the hearing ... and the evidence suggested the Claimant was permanently and totally disabled." The commission's findings regarding the motion state:

[Claimant] knew that she had an appointment scheduled with Dr. Swarm when she testified at the hearing. [Claimant] could have requested to leave the record open at the hearing in order to submit this report. The doctor's deposition could have been scheduled and employer could have had the opportunity to present any rebuttal evidence. This claim was not tried on a temporary or partial basis. If we were to accept this report at this time, the Commission would have to remand for an additional evidentiary hearing, which would ultimately entail both parties needing to secure depositions of various experts. Dr. Swarm also does not give a basis for his opinion that employee is permanently and totally disabled and we note that there are no medical opinions, vocational opinions, or other competent or substantial evidence in the record that would support a finding that she was rendered permanently and totally disabled from the last accident alone. The report is not so material that it would produce a

different result from what we find here even if it had been presented at trial. See, *Tidwell v. Walker Constr.*, 151 S.W.3d 127 (Mo.App.2004). Additionally, we note that [claimant] did not file an Application for Review; thus, did not timely raise as error the administrative law judge's determination of permanent partial disability. Employee's request to submit additional evidence is denied....

*Wilson v. ANR Freight Systems, Inc.*, 892 S.W.2d 658 (Mo.App.1994), discussed what is required with respect to "newly discovered evidence" in obtaining a new trial which, in effect, was what claimant sought by her motion. The motion in *Wilson* to present "newly discovered evidence" was filed after the administrative law judge had entered an award and an application for review had been filed by employer. *Wilson* explains:

> A party seeking a new trial on the ground of newly discovered evidence presented in the first incidence to the ALJ or the Commission must show the following: (1) the evidence came to the movant's knowledge since the trial; (2) due diligence would not have uncovered the evidence sooner; (3) the new evidence is so material it would probably have produced a different result had it been presented at trial; (4) the new evidence is not merely cumulative of evidence already presented; and (5) the evidence is not offered to impeach the character or credibility of a witness. [Citations omitted.]

*Id.* at 664.

The commission observed that claimant's appointment with Dr. Swarm was scheduled before the hearing was held in her case; that knowing the date of the hearing, she could have taken steps to cause the hearing to be held open for additional evidence. Arguably, claimant did not demonstrate due diligence in availing herself of the evidence in a timely manner. Further, as the commission observed, no basis is given for the "impression" the report states regarding claimant being permanently and totally disabled. The commission concluded that the report, as evidence, was not so material that it would probably have produced a different result if it had been presented at trial. This court does not find that the commission erred in its finding and its ruling denying claimant's motion.

Furthermore, there was evidence before the commission that claimant had been in two additional accidents in August 2004, prior to Dr. Swarm's examination. She collided with a co-worker at another place of employment after which she experienced leg spasms. A second incident occurred at claimant's home when a book fell on her shoulder while she was looking for something in a closet. The report claimant sought to introduce as additional evidence does not indicate to what event Dr. Swarm attributed his impression concerning claimant's disability. The commission's award is affirmed.

RAHMEYER, P.J., and LYNCH, J., concur.