APAC KANSAS, INC., Appellant,

v.

Earlene SMITH;  Respondent.

Treasurer of the State of Missouri—
Custodian of the Second Injury
Fund, Respondent.

No. WD 67464.

Missouri Court of Appeals,
Western District.

April 24, 2007.

Anne Wickliffe, Kansas City, MO, for appellant.

Daniel R. Brown, Raymore, MO, for respondent, Earlene Smith.

Sherrie N. Hamner, Kansas City, MO, for respondent, Treasurer of State of Mo.

Before ROBERT G. ULRICH, P.J., THOMAS H. NEWTON, J., and GENE R. MARTIN, Sp. J.

THOMAS H. NEWTON, Judge.

In 2002, Ms. Earlene Smith was employed by APAC Kansas, Inc. (APAC). She was engaged in heavy construction work for APAC, which included driving a truck, putting up signs, shoveling asphalt and dirt, and directing traffic. She was injured on the job when a disgruntled driver attacked her. Ms. Smith sustained injuries to her right knee, left shoulder, and head. In subsequent months, Ms. Smith complained of pain in her lower back.

Ms. Smith had several preexisting work injuries. In 1985, she injured her right knee while working in construction. She settled a workers' compensation claim for a 43.75% permanent partial disability. In 1990, while employed as a housekeeper she injured her right shoulder, which required two surgeries. She received workers' compensation for a permanent partial disability of 17.5% of her body as a whole. Her right shoulder injury subsequently affected her ability to work at APAC, requiring her to get assistance loading fifty pound barrels; eventually she stopped loading barrels, and instead drove a truck on the job.

Ms. Smith timely filed her workers' compensation claim and was awarded a permanent total disability as a result of the last injury alone. The Administrative Law Judge ("ALJ") found that she had a permanent partial disability to her lower back. The Labor and Industrial Relations Commission (Commission) affirmed this award. APAC appeals and claims that the total permanent disability should be considered a combination of the last injury and the prior injuries thus making the Second Injury Fund liable for part of the disability. APAC also claims that the Commission erred in awarding the permanent partial disability for the lower back because it was against the overwhelming weight of the evidence. We affirm the decision of the Commission.

■ "When the Commission affirms or adopts the findings of an ALJ ... we review the decision and findings of the ALJ as adopted by the Commission." *Gassen v. Lienbengood*, 134 S.W.3d 75, 79 (Mo.App. W.D.2004). This court:

> on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: (1) That the commission acted without or in excess of its powers; (2) That the award was procured by fraud; (3) That the facts found by the commission do not support the award; (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1.[1]

■ "The Commission's decision is upheld if it is supported by competent and substantial evidence on the whole record." *Nunn v. C.C. Midwest*, 151 S.W.3d 388, 394 (Mo.App. W.D.2004). The award is not supported if it "is contrary to the overwhelming weight of the evidence." *Id.* at 395. "We defer to the Commission on issues concerning credibility and the weight to be given conflicting evidence." *Hughey v. Chrysler Corp.*, 34 S.W.3d 845, 846 (Mo.App. E.D.2000).

■ We employ a four-part test to determine the liabilities of the employer and second injury fund. *Kizior v. Trans World Airlines*, 5 S.W.3d 195, 200 (Mo.

---

**1.** Statutory references are to RSMo. (2000), unless otherwise indicated.

App. W.D.1999).[2] We first consider the liability of the employer in isolation by determining the degree of the employee's disability due to the last injury. *Id.* Then the degree of the employee's disability attributable to all injuries is determined; followed by a deduction of the degree of preexisting injury from the total disability following the last injury. *Id.* The balance of liability is assigned to the Second Injury Fund. *Id.* In order for the preexisting disability to be eligible for Second Injury Fund liability, the preexisting disability must be of such seriousness that it constituted a "hindrance or obstacle to employment or to obtaining reemployment." § 287.220.1.

■ In its first point, APAC claims that the Commission erred in finding that the last injury alone rendered Ms. Smith totally disabled. In support of this contention APAC states that any preexisting injury that constitutes a hindrance or obstacle to employment should trigger Second Injury Fund liability. We disagree. A preexisting disability is irrelevant to our consideration until after a determination of the degree of disability is assigned to the last injury alone. *Kizior,* 5 S.W.3d at 201.

■ To require payment by the Second Injury Fund, the preexisting disability must pose a hindrance or obstacle to employment or reemployment. *Gassen,* 134 S.W.3d at 80–81. Contrary to APAC's assertion, this does not mean that a preexisting disability that is a hindrance or obstacle to employment automatically triggers the Second Injury Fund. The employer is responsible for the degree of disability resulting from the last injury considered in isolation. *Kizior,* 5 S.W.3d at 200. Here the Commission determined

that the last injury was the sole cause of the total permanent disability. So, the Commission was not required to examine the prior disabilities.

■ APAC also asserts that a preexisting disability is presumed to continue undiminished and, therefore, it was an error to determine that the last injury was the sole cause of the total disability. And instead, the permanent total disability was caused by a combination of the injuries. APAC is incorrect that preexisting disabilities are presumed to continue undiminished in this case because the statute states that "the percentage of disability shall be conclusively presumed to continue undiminished whenever a subsequent injury to the same member or same part of the body also results in permanent partial disability." § 287.190.6. When the words in a statute are plain and susceptible to only one meaning we must use the plain meaning of those words and do not attach or imply any other meaning. *See Higgins v. Mo. Div. of Employment Sec.,* 167 S.W.3d 275, 282 (Mo.App. W.D.2005). The statute specifically applies to subsequent permanent partial disability and does not include permanent total disability. The plain meaning of the statute is that the presumption does not apply if the result of the injury is permanent total disability. Thus, the presumption does not apply in this case.

■ What we are left to discover is whether the award determining that the disability was solely the result of the last injury is contrary to the overwhelming weight of the evidence. APAC suggests that Ms. Smith was only able to maintain employment because of accommodations made by her employer. Again, this is only important if a determination is made that

---

**2.** Overruled on other grounds by *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 225 (Mo.2003).

the last injury is not responsible for the entirety of her total permanent disability. Similarly, the evidence from Ms. Smith and her son that her prior disability impaired her functioning at work and in her normal activities is not sufficient alone to require Second Injury Fund liability. This evidence merely indicates that she had a preexisting injury that qualifies for Second Injury Fund liability if the second injury is not responsible for the entirety of the resulting disability.

Three other people were deposed and submitted reports discussing the extent of the work place injury and its effect on Ms. Smith's disability: Dr. P. Brent Koprivica, Mr. Michael Dreiling, and Dr. Allen Parmet. Dr. Koprivica opined that the 2002 injury caused the entire disability. Both Mr. Dreiling and Dr. Parmet found that the current disability was a combination of the preexisting disability and the last injury, although Dr. Parmet's opinion did not include Ms. Smith's head injury because that injury was still being investigated and treated. The Commission found Dr. Koprivica to be the most credible, and we defer to the Commission on questions of credibility. *Custer v. Hartford Ins. Co.,* 174 S.W.3d 602, 610 (Mo.App. W.D.2005).

Additionally, Mr. Dreiling, when asked about Dr. Koprivica's report, stated that Ms. Smith's headaches, which occur several times a week and cause her to need to lie down for between ten and forty minutes would not be acceptable in a workplace. No evidence showed that these headaches predated the last workplace accident. So in this respect, Mr. Dreiling's opinion supports the Commission's decision. Thus, the Commission's decision is not against the overwhelming weight of the evidence, and, in fact, is supported by the evidence. This point is denied.

In its second point, APAC also challenges the Commission's finding that Ms. Smith's complaints of lower back pain were caused by the work injury. We note that the finding of a permanent partial disability in her lower back is almost irrelevant in this case, because the Commission determined that Ms. Smith had a permanent total disability. Although it was characterized as "probably the most minimal condition resulting from the 2002 accident," it was still included in the whole, so we review whether the adjudication of disability to the back was against the overwhelming weight of the evidence.

APAC points to the lapse of several months before Ms. Smith made any complaints of back pain, and that she never requested medical treatment for the back pain from APAC, despite a lengthy and complicated course of medical evaluation and treatment. We do not find, and APAC does not provide, any rule of law or statute that requires us to find that a delay in the onset of a disability disposes of a case for that disability. Neither do we find any requirement that Ms. Smith request medical treatment for an injury to be adjudged disabled.

APAC also claims that since Ms. Smith did not report any back pain soon after the accident, the back pain cannot be related to the accident that occurred at work. However, Dr. Koprivica indicated in his June 9, 2004, report that her back pain was caused by her altered gait,[3] which resulted from the knee injuries she sustained in the workplace accident. Ms. Smith did not request treatment for the back pain. This failure mitigates against the connection of her back pain to the accident, but not conclusively.

APAC further argues that Ms. Smith should have testified that the back injury

---

3. Gait refers to the manner in which a person   or animal moves on foot.

**6**

was the result of the workplace accident. Ms. Smith was not qualified to give an opinion on the causation of her back pain, and APAC, rightfully, would have objected to any attempt on her part to introduce such evidence. APAC points to her testimony that her left shoulder and right knee injuries were caused by her workplace accident. However, these injuries were manifested immediately after the accident, unlike her back injury. She did testify though that she had back pain, which affected her ability to work.

Ms. Smith testified that her inability to work was in part due to her inability to sit or stand for long periods of time because of her back. Furthermore, although she did not testify about the cause of her back pain, Dr. Koprivica attributed the back pain to Ms. Smith's altered gait due to the injuries to her knees.

Determinations of credibility and the weight given to conflicting evidence are within the discretion of the Commission.

*Custer*, 174 S.W.3d at 610. The Commission specifically found Dr. Koprivica to be a more credible witness. From this credibility determination in combination with the record considered as a whole, we cannot say that the determination that Ms. Smith's back injury was a disability resulting from her workplace accident was against the overwhelming weight of the evidence. Thus, since there is substantial evidence in support of the award, which is not against the overwhelming weight of the evidence, we affirm the award of a partial permanent disability of 5% to Ms. Smith for her back.[4]

ROBERT G. ULRICH, P.J., and GENE R. MARTIN, Sp. J., concur.

---

4. In its reply brief APAC submitted a motion to strike Ms. Smith's statement of facts. APAC complains that Ms. Smith's statement of facts violates Rule 84.04(c) because it is argumentative and includes conclusory opinion statements. "As in *Higgins v. Mo. State Employees Retirement Sys.*, 760 S.W.2d 449, 451 (Mo.App. W.D.1988), *cert. denied*, 490 U.S. 1047, 109 S.Ct. 1956, 104 L.Ed.2d 425 (1989), the deficiencies about which appellant complains are not so severe that this court would grant the harsh remedy sought by appellant." *P.G.M. v. Jasper County Juvenile Office*, 149 S.W.3d 507, 509 n. 1 (Mo.App. S.D.2004). The motion to strike Ms. Smith's statement of facts is denied.